**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonia Helmick,<br><br>             Plaintiff,<br><br>v.<br><br>Douglas A. Collins, Secretary, United States Department of Veterans Affairs,[1]<br><br>             Defendant. | No. CV-22-00571-TUC-LCK<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment and supporting Statement of Facts. (Docs. 62-66.) Defendant's motion and fact statement were filed twice because a public version was redacted to protect information subject to the Privacy Act (Docs. 62, 63) and a second unredacted version was filed under seal (Docs. 64-66). Plaintiff filed a Response and Controverting Separate Statement of Facts (Docs. 69, 70); and Defendant replied (Doc. 71). The Court finds that Defendant is entitled to summary judgment in his favor.

**BACKGROUND**

Plaintiff Sonia Helmick applied for, and accepted, a position as a nurse practitioner at the Department of Veterans Affairs Medical Center in Tucson in 2021. She alleges that the salary she ultimately was offered had been reduced in retaliation for her participation

---

[1] Plaintiff originally named Denis R. McDonough as Defendant in his official capacity as Secretary of Veteran Affairs. (Doc. 1.) Because that role is held now by Douglas A. Collins, he automatically is substituted as Defendant. Fed. R. Civ. P. 25(d).

in a protected Equal Employment Opportunity (EEO) activity. Her complaint alleges unlawful retaliation in violation of Title VII. (Doc. 1.) After the close of discovery, Defendant filed the instant motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). Summary judgment is appropriate if the pleadings and supporting documents "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not produce evidence of a genuine issue of material fact but may satisfy its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## FACTS

Defendant submitted a Statement of Facts comprised of 80 paragraphs. (Docs. 63, 65.) Plaintiff controverted only six of the paragraphs. (Doc. 70 at 1-5.) Therefore, the Court adopts, essentially verbatim, the uncontested paragraphs to the extent they are relevant and not filed under seal. The Court also includes relevant paragraphs from Plaintiff's Statement of Facts. (Doc. 70 at 5-8.) The Court found Defendant's contested facts not critical to the Court's decision; therefore, they have been omitted. The Court also omitted all sealed fact statements unless the information was mentioned in a public document, finding they were not essential. Some facts included in the Order are not necessary to the Court's legal determination; however, the Court listed them to provide a more complete context for the parties' briefing and Court's decision.

1. Under the authority conferred by Congress under Title 38 of United States Code, the VA prescribed regulations establishing the Nurse Professional Standards Board ("NPSB"). (Defendant's Statement of Facts (DSOF), Ex. 1 ¶ 3.)[2]

2. The NPSB is a peer review board whose principal functions are to make recommendations regarding the appointment of new nurses, including nurse practitioners (NPs), and the advancement of existing nurses at the VA. (DSOF, Ex. 1 ¶ 3; DSOF, Ex. 2 ¶ 4.)

3. With respect to a candidate being considered for employment, the NPSB is tasked with reviewing the candidate's job application and other materials submitted, such as a resume or curriculum vitae, and making a recommendation for the candidate's initial pay grade and step appointment. The NPSB makes its recommendations on a Board Action form, which is VA Form 10-2543. (DSOF, Ex. 1 ¶ 4; DSOF, Ex. 2 ¶ 4.)

4. At all times relevant to this case, the NPSB at the Southern Arizona VA Health Care System facility in Tucson, Arizona (SAVAHCS) submitted its compensation related recommendations to the Associate Director for Patient Care Services (ADPCS) and the ADPCS had, by delegation from the SAVAHCS Medical Center Director, final decision-making authority over any compensation related determinations. (DSOF, Ex. 1 ¶ 5; DSOF, Ex. 2 ¶ 6; DSOF, Ex. 5 ¶ 4.)

5. At all times relevant to this case, Dr. Kerri Wilhoite was the ADPCS at SAVAHCS. (DSOF, Ex. 1 ¶¶ 1-2; DSOF, Ex. 2 ¶ 6; DSOF, Ex. 5 ¶ 4.)

6. In 2008, Plaintiff began her employment with the VA as a staff nurse. (DSOF Ex. 2 ¶ 7; DSOF, Ex. 6 at 8:2-8.)

7. In 2015, while still employed by the VA, Plaintiff earned her Master of Science in Nursing degree and advanced to an NP position at the VA. (DSOF, Ex. 2 ¶ 7; DSOF, Ex. 6 at 9:1-4.)

8. In 2021, Plaintiff sought to rejoin the VA by responding to a job announcement for an NP (Pulmonary) position that had been posted by the VA. (DSOF, Ex. 2 ¶ 10; DSOF, Ex. 6 at 29:4-30:10.)

9. The job announcement advertised a salary range of $103,626 - $162,627 per year and notified potential applicants that the NPSB's "*recommended* salary may be *at any point* in the range listed for this vacancy." (DSOF, Ex. 2 ¶ 10 & Ex. 1.2 (emphasis added).)

10. On April 18, 2021, Plaintiff accepted a "tentative offer" of employment and her onboarding process commenced. (DSOF, Ex. 2 ¶ 11 & Ex. 1.3.)

11. During the onboarding process, the VA completes its due diligence, including reviewing credentials, checking references, and making compensation determinations. Thus, a "tentative offer" of employment does not include terms regarding compensation, as the compensation that will be offered to a candidate is determined during

---

[2] Defendant's Statement of Facts is filed on the Docket in two forms, one public with redactions (Doc. 63) and one unredacted sealed version (Docs. 65, 66).

- 3 -

the onboarding process and conveyed in a final offer of employment. (DSOF, Ex. 1 ¶ 8; DSOF, Ex. 2 ¶ 12.)

12. Plaintiff began making inquiries regarding compensation shortly after her onboarding process began. (DSOF, Ex. 6 at 32:20-33:24.)

13. On April 26, 2021, Nurse Recruiter Barbara O'Conner reached out to a general pool of NPSB members—because an actual NPSB had not yet been assembled to review Plaintiff's credentials—and advised that Plaintiff was an "NP selectee" and she (O'Conner) wanted assistance with a pay "grade/step estimate . . . but not official board action." (DSOF, Ex. 2 ¶ 13 & Ex. 1.4.)

14. On April 27, 2021, a preliminary estimate was prepared, which placed Plaintiff as a Nurse III, Step 12. (DSOF, Ex. 2 ¶ 14 & Ex. 1.5; Plaintiff's Statement of Facts (PSOF) ¶ 1.)

15. According to Plaintiff, O'Conner shared the contents of that preliminary estimate with her during a telephone conversation in April of 2021. (DSOF, Ex. 6 at 32:20-33:10, 44:19-45:19; DSOF, Ex. 3 ¶¶ 4-5 & Ex. 1.6 at USA-031 & Ex. 1.7 at USA-065.)

16. During the relevant time period, Miki Couchoud was an NP at SAVAHCS with a pay grade of Nurse III, Step 3. (DSOF, Ex. 3 ¶ 7.)

17. On May 12, 2021, Plaintiff informed Couchoud that she had "been hired back [to the VA] and verbally offered Nurse 3/Step 12 (the maximum)." (DSOF, Ex. 3 ¶ 8 & Ex. 1.17 at USA-231.)

18. On May 20, 2021, Couchoud met with Wilhoite to express her concerns about pay disparity, and Wilhoite told her that other nurse salaries were "none of [her] business." (PSOF (Doc. 70), Ex. D at 000055.)

19. In June 2021, the Chair of the NPSB, Eve Broughton, told Couchoud that Plaintiff might not receive a Nurse III, Step 12 offer because of the issues Couchoud had raised to Wilhoite. (*Id.* at 000056.)

20. As of June 1, 2021, O'Conner was still having NPSB members "estimate" Plaintiff's compensation with "no board action." (DSOF, Ex. 2 ¶ 16 & Ex. 1.9.) That day, an estimated appointment calculation of Nurse III, Step 11 was completed. (DSOF, Ex. 2 ¶ 18 & Ex. 1.11; PSOF ¶ 2.)

21. On June 17, 2021, O'Conner advised Human Resources that Plaintiff was still "pending initial boarding through the NPSB." (DSOF, Ex. 2 ¶ 17 & Ex. 1.10.)

22. On June 24, 2021, the NPSB completed its "Checklist" in connection with Plaintiff's onboarding. (DSOF, Ex. 1 ¶ 9; DSOF, Ex. 2 ¶ 19 & Ex. 1.12.)

23. On that same day, the NPSB issued its official written Board Action on the required VA Form 10-2543 (Official Board Action) in connection with Plaintiff's onboarding. The Official Board Action is the only Board Action on the required VA Form

10-2543 in connection with Plaintiff's compensation. (DSOF, Ex. 1 ¶¶ 9, 10; DSOF, Ex. 2 ¶ 20 & Ex. 1.13.)

24. In its Official Board Action, the NPSB recommended that Plaintiff be appointed at Nurse III, Step 4. (DSOF, Ex. 1 ¶ 9; DSOF, Ex. 2 ¶ 21; DSOF, Ex. 5 ¶ 5.)

25. Wilhoite, as the ADPCS, approved the NPSB's Official Board Action on July 6, 2021. (DSOF, Ex. 1 ¶ 11; DSOF, Ex. 2 ¶ 22 & Ex. 1.13; DSOF, Ex. 5 ¶ 7; PSOF, Ex. C.)

26. On July 8, 2021, Plaintiff texted Couchoud and informed her that she only received a Nurse III, Step 4. (PSOF, Ex. D at 000056.)

27. On July 13, 2021, Broughton told Plaintiff a number of things: the situation was "murky"; "the politics around this, due to other people, has gotten very intense and so I am trying to tamp down"; Wilhoite was "very angry that I've talked to you"; Wilhoite wanted to "get equity across the line"; Broughton had never seen "this much of a different decision from what the board recommends than what is the final offer"; and Wilhoite sat on Plaintiff's onboarding for weeks and made the board go "back and back." (PSOF, Ex. E at 5-6, 8.)

28. By letter dated July 16, 2021, the VA formally offered Plaintiff the NP position that she had applied for at a salary of $134,617, which was based on Plaintiff's placement at a Nurse III, Step 4. (DSOF, Ex. 1 ¶ 12; DSOF, Ex. 2 ¶ 23 & Ex. 1.15.)

29. Plaintiff accepted the terms of the VA's offer of employment on July 19, 2021. (DSOF, Ex. 1 ¶ 13; DSOF, Ex. 2 ¶ 25 & Ex. 1.3.)

30. Couchoud filed an EEO Complaint on August 20, 2021. (DSOF, Ex. 1 ¶ 14; DSOF, Ex. 3 ¶ 6 & Ex. 1.16.)[3] The parties acknowledge, in publicly filed documents, that Plaintiff's pay estimate was mentioned in Couchoud's EEO Complaint. (Doc. 1 ¶ 11; Doc. 62 at 13; Doc. 69 at 8-9.)

31. Plaintiff previously testified:

Q. And you have an understanding that Miki [Couchoud] made an employment-related complaint about her pay; correct?
A. Correct.
Q. Did she share with you what she was doing in that regard while she was doing it?
A. No.

\* \* \*

---

[3] Although the fact of Ms. Couchoud filing an EEO Complaint and the supporting evidence was filed under seal, the Court includes it in the Order because the date is central to the resolution of this motion. Additionally, Defendant referred to the filing date in the body of his motion without redaction. (Doc. 62 at 13.) Further, Plaintiff cited a filing date for Couchoud's EEO Complaint in her Title VII Complaint; however, the date was erroneous. (Doc. 1 ¶ 10 (alleging Couchoud's EEO Complaint was filed in April 2021).)

> Q. Did you assist Miki [Couchoud] in any way with her complaint?
> A. No.
> Other than hav[ing] a conversation about what my salary was . . .

(DSOF, Ex. 6 at 56:23-57:3 & 58:7-12.)

32. Plaintiff reached out to the SAVAHCS Director Jennifer Gutowski on September 7, 2021, expressing that she had a concern with her onboarding process. (DSOF, Ex. 5 ¶ 8 & Ex. 1.19.)

33. On September 21, 2021, Plaintiff, Gutowski and Wilhoite met to discuss Plaintiff's onboarding. As noted in Gutowski's Memorandum prepared in connection with that meeting:

> Dr. Wilhoite addressed Ms. Helmick's claims regarding the credit being given to accomplishments annotated in her resume. Dr. Wilhoite explained that she was not given credit for her coauthorship of the published research article due to Ms. Helmick being the fifth coauthor credited in the article. Dr. [Willhoite] clarified that the criteria delineates the coauthor must be a major contributor to the research project. Dr. Wilhoite went on to explain that Ms. Helmick's resume did not provide the information that would verify that she served a full term on the AZ State Board of Nursing as needed to meet the requirement for credit. Lastly, Dr. Wilhoite explained that she was given credit for one of her specialty certifications that was achieved since Ms. Helmick's resignation in 2019.

(DSOF, Ex. 5 ¶ 9 & Ex. 1.20.)

34. In a subsequent conversation (that appears to have been recorded by Plaintiff), Wilhoite informed Plaintiff that she could not "look at one person as an individual and bypass other nurse practitioners that are internal to the agency" and that she had done "what I felt was fair and equitable to you . . . and honoring the nurse practitioners that are on board." (PSOF, Ex. E at 17, 18, 25, 28.)

35. Gutowski also contacted Heather Arredondo, the Program Manager for Professional Standards Boards at the Office of Nursing Services, to coordinate a site visit to review the local NPSB processes at the SAVAHCS location and Plaintiff's onboarding. (DSOF, Ex. 5 ¶ 10 & Exs. 1.21, 1.22.)

36. Two consultants visited the SAVAHCS location from December 1-3, 2021. (DSOF, Ex. 5 ¶ 11.)

37. The consultants understanding was that, after Couchoud spoke to Wilhoite about Helmick's recommended Nurse III, Step 12 salary, Wilhoite reached out to the NPSB and "reviewed and discussed the proposed decision change." (PSOF, Ex F at USA-2697, 2698; PSOF, Ex. G at USAO-1910, 1911.)

38. With respect to Plaintiff's onboarding specifically, the consultants concluded that Plaintiff's placement at Nurse III, Step 4 was an appropriate crediting of Plaintiff's qualifications. (DSOF, Ex. 5 ¶ 12 & Ex. 1.23.)

39. The consultants reached a different outcome (not a Step 4 or 12) when evaluating Plaintiff's qualifications under the same criteria. (PSOF, Ex. F at USA-2698.)

40. The consultants did note that Wilhoite and the NPSB Chair had discussed Plaintiff's compensation before any official board action. Although the consultants would have preferred that Wilhoite only disapprove an NPSB recommendation on an official Board Action (i.e., VA Form 10-2543), they determined that she was within her scope as the approving official (ADPCS) to weigh in on compensation determinations by the NPSB. (DSOF, Ex. 5 ¶ 13 & Ex. 1.24.)

41. Wilhoite acknowledged that she gave input to the NPSB as to what step should be given to Plaintiff. (PSOF, Ex. I at 17.)

42. On February 25, 2022, Plaintiff filed her formal Complaint of Employment Discrimination on VA Form 4939. (Doc. 1, Ex. 1.)

## **DISCUSSION**

Plaintiff has alleged that Defendant retaliated against her for participating in protected EEO activity, supporting Couchoud's EEO claim, by reducing the salary she otherwise would have been offered. To prove a Title VII retaliation claim,[4] Plaintiff must show that she engaged in a protected activity, she was subjected to an adverse employment decision, and the adverse action was causally linked to her protected activity. *See Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997). Defendant acknowledges that a pay reduction in a job offer could qualify as an adverse employment action. But he contends that Plaintiff cannot meet elements one—engaging in a protected activity—and three—causal link between a protected activity and an adverse action— required to establish a prima facie retaliation claim.

---

[4] In the Complaint, Plaintiff alleged solely a violation of Title VII. (Doc. 1.) In her response to the motion for summary judgment, Plaintiff also cites the ADEA as a basis for her retaliation claim. (Doc. 69 at 6.) Because the ADEA is not a basis for her Complaint, the Court does not include it in the analysis. However, the standard for an ADEA retaliation claim is the same as that of Title VII, *see Barnes v. Saul*, 840 F. App'x 943, 946 (9th Cir. 2020) (quoting *Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997)); *compare* 42 U.S.C. § 2000e-3 (Title VII retaliation) *with* 29 U.S.C. § 623(d) (ADEA retaliation), and the outcome of an ADEA claim would be the same as that of the Title VII claim addressed in this Order.

In her response to the motion for summary judgment, Plaintiff also contends that Defendant's conduct—reducing her pay to address a discrimination claim of another employee—is prohibited by the Equal Pay Act and ADEA. (Doc. 69 at 5.) Plaintiff did not plead a claim under the ADEA or the Equal Pay Act; therefore, they are not addressed in this Order.

**Protected Activity**

"It shall be an unlawful employment practice for an employer to discriminate against any . . . applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). This Title VII provision offers employees protection for two types of conduct as set forth in the "opposition clause" and the "participation clause." *Sias v. City Demonstration Agency*, 588 F.2d 692, 694-95 (9th Cir. 1978). Plaintiff alleges that Defendant violated only the participation clause (Doc. 69 at 6-9) by retaliating against Plaintiff for her involvement in Couchoud's EEO claim.

"The participation clause is broadly construed to protect employees who utilize the tools provided by Congress to protect their rights." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (citing *Sias*, 588 F.2d at 695). As argued by Plaintiff, courts have found that all types of "participation" are protected under this clause. *See Deravin v. Kerik*, 335 F.3d 195, 203-04 (2d Cir. 2003) (interpreting participate in "any" manner literally and expansively); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) (construing the kinds of participation broadly). In contrast, the category of covered proceedings is limited to those occurring "under this subchapter," which is encompassed in 42 U.S.C. §§ 2000e to 2000e-17 (the provisions of Title VII). *See Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) (quoting 42 U.S.C. § 2000e-3). In other words, the clause protects only participation in proceedings established by Congress to protect employee rights against discrimination, which includes EEO charges (and subsequent administrative proceedings) and civil court actions. *See id*; 42 U.S.C. §§ 2000e-5, 2000e-6, 2000e-9; *cf. Deravin*, 335 F.3d at 204 (finding that defending against a discrimination charge is a protected activity but only if it "involves actual participation in a Title VII proceeding or investigation").

As stated by one district court, "[t]he participation clause only prohibits retaliation against persons who participate in the EEOC process." *Phillips v. Mabus*, No. CIV. 12-

00384 LEK, 2013 WL 4662960, at *14 (D. Haw. Aug. 29, 2013), *aff'd*, 607 F. App'x 762 (9th Cir. 2015). This does not include conduct occurring prior to "the instigation of statutory proceedings," such as an employee's direct communications to an employer. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (finding that an employee's letter to his employer could be a protected activity only if it came within the opposition clause). Further, the participation clause does not protect a person from adverse employment actions taken in response to an employee's participation in an internal employer investigation. *See Vasconcelos*, 907 F.2d at 113 (finding section 2000e-3 did not apply to an employee's participation in an internal affairs investigation); *Greisen v. City of N. Las Vegas*, 251 F. App'x 462, 463 (9th Cir. 2007) (finding 2000e-3 did not apply to an employee's interview about another employee's internal harassment complaint because it was not an EEO proceeding); *Snider v. Greater Nevada, LLC*, No. 3:07-CV-00583-RCJ-RAM, 2009 WL 3319802, at *15 (D. Nev. Oct. 14, 2009) (finding the participation clause did not apply to an internal complaint and that eliminating an employee's position before the filing of an EEO proceeding could not be retaliation for participating in that proceeding).

 Here, Plaintiff contends she participated in Couchoud's EEO proceeding by disclosing her anticipated salary from her conditional employment offer. (Doc. 69 at 7, 8-9.) She further argues that the revelation of her anticipated salary to Couchoud formed the basis of Couchoud's EEO complaint and Wilhoite knew that. (*Id.* at 9.) The problem with Plaintiff's theory is that any "participation" by Plaintiff occurred months before Couchoud filed her EEO complaint. As argued by Plaintiff, the information she disclosed to Couchoud may well have been a causal factor in the filing of Couchoud's Title VII claim. As a precipitating event, however, Plaintiff's entire involvement occurred <u>prior</u> to the filing of Couchoud's charge. Even it Couchoud talked about Plaintiff in the charge, no one included her in the investigation, and she did not have a voluntary, or involuntary, role after it was filed. This does not amount to participation in a Title VII proceeding.

The cases upon which Plaintiff relies do not support a different conclusion. In *Jute*, the plaintiff voluntarily was disclosed as a favorable witness in support of a Title VII civil action and had saved vacation days for a deposition, but the case settled before she provided testimony. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 169 (2d Cir. 2005). Because Jute's involvement as a witness, limited though it turned out to be, was associated with Title VII litigation it was protected under the participation clause. In *Merritt*, the plaintiff provided involuntary testimony at a deposition for a Title VII lawsuit in which he was an accused sexual harasser.120 F.3d at 1182. Regardless, the court found that qualified as participation in a Title VII proceeding. *Id.* at 1186-87. In stark contrast, here, Plaintiff's "participation" was complete months before Couchoud initiated a Title VII charge. For that reason, her actions do not come within the participation clause, and she has not established that she engaged in a protected activity as required for the first element of a retaliation claim.

**Causal Connection**

Plaintiff alleges that causation is demonstrated by Wilhoite involving herself in the NPSB process right after Couchoud met with Wilhoite to complain about Plaintiff's conditional salary offer. To establish a causal link, Plaintiff must show that her final salary offer would have been higher <u>but-for</u> her participation in Couchoud's EEO proceeding. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "Causation 'may be inferred from circumstantial evidence, such as the [defendant's] knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory' conduct." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 869 (9th Cir. 2014) (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). This Court, however, has concluded that proximity and defendant's knowledge are not sufficient, alone, to demonstrate but-for causation after *Nassar*. *See Green v. City of Phoenix*, No. CV-15-02570-PHX-DJH, 2019 WL 4016484, at *12 (D. Ariz. Aug. 26, 2019) (quoting *Shaninga v. St. Luke's Med. Ctr. LP*, 2016 WL 1408289, at *11 (D. Ariz. Apr. 11, 2016), *aff'd*, 823 F. App'x 549 (9th Cir. 2020)).

To the extent the Court were to find that Plaintiff participated in Couchoud's EEO proceeding, it could not have had any bearing on her salary offer. Plaintiff's alleged participation was providing information to Couchoud in May 2021, followed by her final salary offer on July 16, 2021. Couchoud did not file her EEO charge until August 20, 2021. Therefore, Plaintiff's salary offer could not possibly have been based on her involvement in an EEO proceeding that had not yet been initiated. Because Couchoud's complaint to Wilhoite about Plaintiff's tentative salary was close in time to the reduction in Plaintiff's ultimate salary offer, those two things may have been causally connected. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (holding that retaliatory intent may be inferred from timing). However, because Couchoud's informal complaint was not part of a Title VII charge or civil litigation, and may never have turned into a formal charge, Plaintiff has not satisfied the causal connection requirement for a prima facie case.

**Conclusion**

The Court finds this case can be resolved solely by examining whether Plaintiff can establish a prima facie retaliation claim. Plaintiff has not demonstrated, or even alleged, that there is a genuine issue of material fact as to the prima facie case. And Plaintiff has not established that she engaged in a protected activity or there was a causal connection between a protected activity and an adverse employment action. Therefore, Plaintiff has failed to demonstrate a prima facie claim for retaliation in violation of Title VII. Plaintiff has not demonstrated a genuine issue of fact, and Defendant is entitled to summary judgment as a matter of law.

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Docs. 62, 64) is **GRANTED**. The Clerk of Court should enter judgment for Defendant and close this case.

Dated this 19th day of March, 2025.

Honorable Lynnette C. Kimmins
United States Magistrate Judge